UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDREW PAUL OSANTOWSKI,

      Petitioner,

                                      CASE NO. 2:08-CV-13759
                                       JUDGE LAWRENCE P. ZATKOFF
   v.                              MAGISTRATE JUDGE PAUL J. KOMIVES

HUGH WOLFENBARGER,

      Respondent.[1]

_____/


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION ............................................................ 1
II.   REPORT ...................................................................... 2
    A.   *Procedural History* .................................................... 2
    B.   *Factual Background Underlying Petitioner's Conviction* ................. 5
    C.   *Standard of Review* ................................................... 8
    D.   *Analysis* ............................................................ 10
         1.    *First Amendment Challenge* ................................... 12
             a.  Clearly Established Law ................................... 12
             b.  Analysis ................................................. 14
         2.    *Void for Vagueness Challenge* ................................ 16
             a.  Clearly Established Law ................................... 16
             b.  Analysis ................................................. 17
    E.   *Recommendation Regarding Certificate of Appealability* ............... 18
         1.    *Legal Standard* ............................................. 18
         2.    *Analysis* ................................................... 20
    F.   *Conclusion* ......................................................... 20
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ................................... 20

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus. The Court should also deny petitioner a certificate of appealability.

_____

[1] By Order entered this date, Hugh Wolfenbarger has been substituted in place of Sherry Burt as the proper respondent in this action.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Andrew Paul Osantowski is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan.

2.    Prior to trial, the trial court entered an order granting partial suppression of his confession to the police.  The prosecution filed an application for leave to appeal this issue to the Michigan Court of Appeals.  After granting leave to appeal, the court of appeals reversed, concluding that petitioner's confession was voluntary.  *See People v. Osantowski*, No. 263211, 2006 WL 473844 (Mich. Ct. App. Feb. 28, 2006) (per curiam).  Petitioner's application for leave to appeal this decision to the Michigan Supreme Court was denied by that court in a standard order. *See People v. Osantowski*, 476 Mich. 866, 720 N.W.2d 319 (2006)

3.    On June 14, 2005, petitioner was convicted of making a false report or threat of terrorism, MICH. COMP. LAWS § 750.543m; using a computer to commit a crime, MICH. COMP. LAWS §§ 752.796, .797(3)(f); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Macomb County Circuit Court.[2]  On July 21, 2005, he was sentenced to concurrent terms of 30 months' to 20 years' imprisonment on the terrorism and computer convictions, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

4.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through

_____

[2]Petitioner also pleaded guilty to three counts of receiving and concealing stolen firearms, MICH. COMP. LAWS § 750.535b, and was sentenced to concurrent terms of 18-120 months' imprisonment on these convictions.  Petitioner did not challenge these convictions on appeal in the state courts, and does not challenge them in this habeas proceeding.

counsel, the following claims:

      I.    THE CRIME OF MAKING A TERRORIST THREAT OR FALSE REPORT OF TERRORISM, SET FORTH IN M.C.L. § 750.543m, IS UNCONSTITUTIONAL.

      II.   THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO INTRODUCE EXTENSIVE EVIDENCE OF LETHAL WEAPONS FOUND IN DEFENDANT'S HOME, WHICH WAS SPECIFICALLY OFFERED TO ESTABLISH THE DEFENDANT'S CAPABILITY TO CARRY OUT A THREAT OF TERRORISM, EVEN THOUGH THE RELEVANT STATUTE PROHIBITS THE DEFENSE FROM ARGUING LACK OF INTENT OR CAPABILITY TO COMMIT ANY SUCH ACTS.

      III.  THE TRIAL COURT ERRED BY REFUSING TO PROVIDE THE JURY WITH A CONSTITUTIONALLY SOUND DEFINITION OF THE TERM "THREAT" WHERE AN ORDINARY DICTIONARY DEFINITION OF THE TERM FAILED TO ADEQUATELY CONTEMPLATE THE CRIMINALIZATION OF OTHERWISE PROTECTED FREE SPEECH.

      IV.  THERE WAS INSUFFICIENT EVIDENCE OF A "THREAT" TO CONVICT DEFENDANT OF MAKING A TERRORIST THREAT OR FALSE REPORT OF TERRORISM.

      V.   THERE WAS INSUFFICIENT EVIDENCE OF USING A COMPUTER TO COMMIT A THREAT OF TERRORISM WHERE NO CRIMINAL OR FELONIOUS "THREAT" WAS ESTABLISHED AND WHERE THE UNDERLYING FELONY OF MAKING A TERRORIST THREAT OR FALSE REPORT OF TERRORISM IS UNCONSTITUTIONAL.

      VI.  THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT VALIDLY WAIVED HIS MIRANDA RIGHTS.

      VII.  THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS HOME WHERE OFFICERS RELIED ON A SEARCH WARRANT THAT WAS OVERBROAD ON ITS FACE AND LACKED PROBABLE CAUSE.

The prosecution filed a cross-appeal, challenging the trial court's sentencing of defendant, claiming that Offense Variable 20 ("terrorism"), should have been scored at 100 points, rather than at the zero points scored by the trial court. The court of appeals found no merit to petitioner's claims, and

affirmed his conviction. However, the court also concluded that the trial court had erred in scoring OV-20 at zero points. The court therefore vacated petitioner's sentence and remanded for resentencing. *See People v. Osantowski*, 274 Mich. App. 593, 736 N.W.2d 289 (2007).

5. Petitioner sought leave to appeal to the Michigan Supreme Court, raising the seven claims that he had raised in the court of appeals, as well as an additional claim challenging the court of appeals's ruling on the sentencing issue. The Supreme Court entered an order directing the clerk to schedule oral argument on whether to grant the application for leave to appeal with respect to the sentencing issue, and directing the parties to address that issue in supplemental briefs. *See People v. Osantowski*, 480 Mich. 961, 741 N.W.2d 383 (2007). The Supreme Court subsequently issued an opinion reversing the court of appeals's decision with respect to the sentencing issue. The court denied leave to appeal with respect to petitioner's remaining claims. *See People v. Osantowski*, 481 Mich. 103, 748 N.W.2d 799 (2008).

6. Petitioner filed a petition for a writ of *certiorari* in the United States Supreme Court. The Court denied the petition on November 10, 2008. *See Osantowski v. Michigan*, 129 S. Ct. 574 (2008).

7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 2, 2008. As grounds for the writ of habeas corpus, he raises three claims:

I. MICHIGAN'S "MAKING TERRORIST THREAT OR FALSE REPORT OF TERRORISM" STATUTE IS UNCONSTITUTIONAL.

II. THE MICHIGAN COURT OF APPEALS'S FINDING OF CONSTITUTIONALITY WITH THE STATUTE AND ITS APPLICATION WAS AN UNREASONABLE APPLICATION OF UNITED STATE SUPREME COURT HOLDINGS.

III. ALL OF PETITIONER'S CONVICTIONS ARE UNCONSTITUTIONAL AS THEY ARE THE PROGENY OF AN UNCONSTITUTIONAL

STATUTE.

Petitioner's constitutional challenge to the statute raises both a First Amendment overbreadth challenge and a due process vagueness challenge.

8.    On March 11, 2009, respondent filed a motion to dismiss, arguing that petitioner's third claim was unexhausted. Petitioner responded by filing a letter with the Court, asking the Court to delete Claim III from the petition and proceed on the remaining claims. On May 5, 2009, the Court denied the motion to dismiss as moot and ordered respondent to file an answer addressing petitioner's remaining claims. Respondent filed his answer on June 4, 2009. He contends that petitioner's claims are without merit.[3]

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from threats he communicated over the Internet. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendant's convictions stem from electronic chat room conversations that defendant engaged in under the screen name "nazi_bot_sadistic." The primary topics for defendant in these communications were his feelings of hate and his plans for the infliction of death and terror on his own family members and other individuals whom he perceived as deserving of the fate defendant chose for them:[2]
>
> > [2]The communications at issue are presented in their original form, including spelling and grammatical errors.
>
> I cant imagine going through life without killing a few people ... nothing wrong with killion ... people can be kissing my shotgun

---

[3]Respondent notes that petitioner did not raise a constitutional challenge to the statute in the trial court, and that for this reason the Michigan Court of Appeals reviewed this claim only for plain error. Respondent does not, however, explicitly argue that petitioner's claims are barred by a state court procedural default, and the answer is limited to addressing the claims on the merits. Accordingly, this Report likewise only considers the merits of petitioner's claims.

> straight out of doom ... I tell it how it is ... if u don't like it, u die ...
> if I don't like what u stand for, you die ... if I don't like the way u
> look at me, u die ... I choose who lives and who dies....

Referencing his intent to engage in "my rampage" and asserting his readiness to act as being "on the brink of mass murder," defendant questioned whether others would later contemplate "why did he kill all these white people." Defendant wrote that "im going to bring nightmares back to everyone" and "roam the land as a ghost still killing people."

In these online conversations, defendant discussed his social isolation and stress at school, stating:

> I cant even take going to school ... fuckin bullied ... made fun of ...
> pushed ... people can get away with murder ... thinking about school
> ... how im going to get my ass kicked and made fun of ... look at this,
> 8 months to live, people ruined my life, I don't even have any friend
> ... I think girls realized that my real girl is violence ... fuck this ... not
> even after I kill people will that be near fair payback not even close
> ... I cant wait till doom becomes reality ... its funny ... having the
> power to control who lives and who dies ... saying peeakboo under
> tables and aking people why I should spare their lives and why they
> believei n god....

Defendant hypothesized why school shootings did not occur "in the 30 40 50s," despite the prevalence of guns and opportunity, and suggested that integration and the lack of values being taught now are responsible for the increase in school violence, asserting that "DIVERSITY KILLS." Expressing his concurrence with Hitler's ideals and implying that genocide was, in actuality, an attempt "to do a good thing," defendant later indicates that he would use the term "mass murderer" to label himself.

Defendant bragged about the weapons at his disposal, referencing his "stolen AK," shotguns with a "6 shot capacity before reload" and shortened barrels, "high capacity magazines" and "14 40rd mags for one rifle," and discussed videotaping himself with the guns and building pipe bombs. Defendant indicated he had sufficient weapons at his disposal to effectuate his plans, stating:

> CHOOSE TO DIE IN THE NEAR FUTURE ... ITS YOUR
> CHOICE ... ANYTIME ... IS A GO NOW ... IT NO LONGER
> MATTERS WHEN ... WHENEVER I DEEM RIGHT ... I STILL
> NEED MORE STUFF IN ... BUT I GOT THE BULK OF IT.

Defendant further asserted:

THEIR ALL PLAYING INTO MY FAVOR ... see it really just topped notched the no burning back scale ... NOW I DONT CARE IF THEIR ARE 500 POLICE ... around the school ... because if someone is determined enough to do something ... they will do it ... put all the security measures you ever want in there ... it doesnt matter ... if someone wants to do something, they will do it.

Additionally, defendant acknowledged that he was currently facing serious criminal charges,[3] stating:

[3]Notably, in July 2004, defendant and his father, Marvin Osantowski, were charged with the theft of a golf cart. It is assumed that defendant, in this message, was referring to Clinton Township police officer Deena Terzo, the police liaison officer for the school system in which defendant was enrolled and who also was involved in the golf cart investigation.

and the detective that is prosecuting me is sheriff deputy at my school, its she ... so looks like ill be kicking up nbk some time soon ... since im facing 5 years in prison/10,000 dollar fine/or 3 times the amount of damage ... whichever is greater ... now im not even worried about getting into a gunfight with her ... cause it doestn matter ... now im more than ever determined to blow her head off.

Defendant admitted that he had previously been expelled from a private school, asserting the basis for his school expulsion was the existence of rumors that he had been "looking for guns."

The recipient of defendant's online communications was a female teenager, Celia McGinty, with the screen name "dazedck00." Although McGinty engaged in ongoing conversations with defendant over the Internet, her concern regarding several of defendant's statements and assertions became evident as their conversations continued. When defendant bragged that he would be "famous" and "everyone will know who i am," McGinty responded, "whoa now ... WTF are you talking about...." After defendant affirmed his belief in the propriety of killing, McGinty indicated she was at a loss regarding "how im supposed to respond" and suggested defendant's assertions "sounds like bullshit to me." Despite initial disbelief, McGinty began to convey her concern, stating:

are you serious ... and your gonnasee what you wanna see ... i believe you i think its a stupid idea and this point your trying to prove isnt gonna end up the way you want it.

After defendant described his guns and ammunition, McGinty responded, "i think your crazy," and inquired whether defendant had ever discussed these ideas with anyone else. In response, defendant asserted that "im the real deal." Defendant

appears to have acknowledged McGinty's growing uncertainty regarding his assertions by indicating, "IF YOU DONTL IKE WHAT I SAY ... BLOCK ME ... I WANTUTO."

McGinty gave copies of her online conversations with defendant to her father, George McGinty, a sergeant with the Washington State University Police Department, who in turn forwarded copies to the Clinton Township Police Department. The Clinton Township Police Department initiated an investigation and contacted defendant's school regarding the content of his communications with McGinty. Defendant was arrested on September 16, 2004, while attending class at Chippewa Valley High School. Because of concerns by parents and school officials, late afternoon and evening school-related events were canceled.

Although a search of defendant's school locker failed to locate any weapons, following the issuance and execution of a search warrant for defendant's home, police located in defendant's bedroom, and in the attic crawl space accessible from that room, an AK-47 semiautomatic assault rifle, a Mossberg shotgun, an Escort shotgun,[4] a significant amount of ammunition, several knives, and a toolbox containing pipe bomb components (including several metal pipes, some with capped ends with screws or nails affixed to the outside), propane containers, bottles of ammonium nitrate and aluminum nitrate, and cans of sterno.

[4]It was determined that the guns had been stolen from a local firearms store, resulting in defendant also being charged with breaking and entering, Macomb Circuit Court Case No. 05-000315-FH.

When questioned by the police, defendant denied an intention to hurt anyone, and said that his references to weapons and prior criminal activity were "all talk." Defendant asserted that his statements regarding the detective in his online chats were not "meant as a direct threat," but were merely an expression of his anger. Defendant denied being a danger to anyone and stated that his comments pertaining to "doom and doomsday" were, in actuality, references to a game that he played.

*Osantowski*, 274 Mich. App. at 595-600, 736 N.W.2d at 294-96.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Analysis*

Petitioner's habeas application challenges the constitutionality of Michigan's Anti-Terrorism Act, specifically the section of the Act under which he was convicted, criminalizing the

making of a threat of terrorism or a false report of terrorism.  That provision of the Act states:

> (1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.
> (b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.
> (2) It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism.
> (3) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

MICH. COMP. LAWS § 750.543m.  "Act of terrorism" is defined by the Act as

> a willful and deliberate act that is all of the following:
> (I) An act that would be a violent felony under the laws of this state, whether or not committed in this state.
> (ii) An act that the person knows or has reason to know is dangerous to human life.
> (iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

MICH. COMP. LAWS § 750.543b(a).  "Dangerous to human life," in turn, is defined as "that which causes a substantial likelihood of death or serious injury," *id.* § 750.543b(b), and "violent felony" is defined as "a felony in which an element is the use, attempted use, or threatened use of physical force against an individual, or the use, attempted use, or threatened use of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device." *Id.* § 750.543b(h).  The substance and devices set forth in the definition of violent felony are further defined in MICH. COMP. LAWS § 750.200h(f)-(j), (*l*), which is incorporated into the definition of violent felony by MICH. COMP. LAWS § 750.543b(c).

Petitioner raises a facial challenge to the constitutionality of § 750.543m, attacking the

statute on two grounds.  First, petitioner contends that the statute is unconstitutional under the First Amendment because it is overbroad and criminalizes constitutionally protected speech. Second, he contends that statute fails to provide a person of ordinary intelligence with notice of the conduct proscribed by the statute, and thus is void for vagueness under the Due Process Clause of the Fourteenth Amendment.  The Court should reject each of these claims.

1.     *First Amendment Challenge*

*a.  Clearly Established Law*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I.  Although the text of the First Amendment is directed at laws passed by the federal legislature, the rights set forth in the amendment are protected from invasion by the states through the Fourteenth Amendment.  *See Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).  While the Free Speech Clause is written in language which could suggest that the government may not regulate any "speech" on any basis, the Clause has not been interpreted so broadly.  Rather, it is well established that

> [t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Beauharnais v. Illinois*, 343 U.S. 250, 255-57 (1952) (internal quotation omitted); *see also, United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377,

382-83 (1992). Importantly, as relevant here, "the First Amendment . . . permits a State to ban a 'true threat.'" *Virginia v. Black*, 538 U.S. 343, 359 (2003); *accord R.A.V.*, 505 U.S. at 388. As explained by the Court, "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359.

Although petitioner raised a sufficiency of the evidence challenge in the state courts, he does not here challenge whether his statements were "true threats" which the state could proscribe. Rather, he contends that § 750.543m is unconstitutional on its face, because it is overbroad and proscribes speech that is protected by the First Amendment. Although the general rule is that "constitutional rights are personal and may not be asserted vicariously," *Broadrick v. Oklahoma*, 413 U.S, 601, 610 (1973), the Court has carved an exception for First Amendment cases, allowing "[l]itigants . . . to challenge a statute not because their own rights of free expression are violated, but because . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612. However, a party asserting a facial overbreadth challenge must clear a high hurdle, and it is not enough for such a party to show that some hypothetical applications of the statue would violate the First Amendment. Rather, a party raising a facial overbreadth challenge must show that the statute "prohibits a substantial amount of protected speech," "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see also*, *Broadrick*, 413 U.S. at 615. As the Court has explained, "the 'mere fact that one can conceive of some impermissible applications of the statute is not sufficient to render it susceptible to an overbreadth challenge." *Williams*, 553 U.S. at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*,

466 U.S. 789, 800 (1984)).

### b. Analysis

With these standards in mind, it is clear that the Michigan Court of Appeals's rejection of petitioner's overbreadth challenge was not only reasonable, but correct. Contrary to petitioner's argument, the statute does not "criminalize a large portion of even innocuous and innocent behavior." Pet., at 5b. On the contrary, the statute is targeted at, and encompasses only, speech which constitutes a "true threat" which may be proscribed under the First Amendment. The statute makes it a crime to "*threaten*[] to commit an act of terrorism," MICH. COMP. LAWS § 750.543m(1)(a), an act of terrorism being further defined as an act which is (a) a violent felony, (b) dangerous to human life, and (c) intended to intimidate a civilian population or affect the conduct of government. *See* MICH. COMP. LAWS § 750.543b(a). Any threat which meets this definition is sure to qualify as a "true threat," that is a "communicat[ion of] a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. Thus, the court of appeals correctly concluded that "the statutory provisions, when read together, prohibit only 'true threats.'" *Osantowski*, 274 Mich. App. at 603, 736 N.W.2d at 298.

The correctness of this conclusion is demonstrated by the plethora of state and federal cases upholding similar statutes against a facial challenge. As the Ninth Circuit has explained, the courts "have consistently held that statute proscribing threats of death and physical injury are not, on their face, overbroad." *Melugin v. Hames*, 38 F.3d 1478, 1484 (9th Cir. 1994). And, indeed, the courts considering similar threat statutes have consistently found that they are not unconstitutionally overbroad. *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 707 (1969); *Melugin*, 38 F.3d at 1485;

14

*Masson v. Slaton*, 320 F. Supp. 669, 672 (N.D. Ga. 1970); *Lansdell v. State*, 25 So. 3d 1169, 1174-75 (Ala. Ct. Crim. App. 2007); *People v. Toledo*, 26 P.3d 1051, 1058-59 (Cal. 2001); *Lanthrip v. State*, 218 S.E.2d 771, 773 (Ga. 1975); *State v. Milner*, 571 N.W.2d 7, 13 (Iowa 1997); *State v. Schmailzl*, 502 N.W.2d 463, 467-68 (Neb. 1993).

Further, the Michigan Court of Appeals's construction of the statute itself forecloses any claim that the statute is unconstitutionally overbroad. As the Court has explained, "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). Here, the court of appeals explicitly construed the statute as reaching only "true threats" as defined by the Supreme Court in *Black*. *See Osantowski*, 274 Mich. App. at 603, 736 N.W.2d at 298. And in enacting the statute the Michigan legislature explicitly confined the statute to constitutional limits, providing that "[n]otwithstanding any provision in this chapter, a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment of the constitution of the United States in a manner that violates any constitutional provision." MICH. COMP. LAWS § 750.543z; *cf. Grayned v. City of Rockford*, 408 U.S. 104, 109 n.5 (1972) (citation omitted) (quoting *Edwards*, 372 U.S. at 236) ("Where First Amendment interests are affected, a precise statute "evincing a legislative judgment that certain specific conduct be . . . proscribed,' assures us that the legislature has focused on the First Amendment interests and determined that other governmental policies compel regulation."). This provision, coupled with the court of appeals's construction limiting the statute to only "true threats," precludes petitioner's facial overbreadth challenge.

Contrary to petitioner's argument, the fact that "[i]t is not a defense to a prosecution under

15

this section that the defendant did not have the intent or capability of committing the act of terrorism," MICH. COMP. LAWS § 750.543m(2), does not render the statute overbroad as reaching beyond "true threats." As noted above, in *Black* the court defined "true threats" as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. This definition requires the speaker to intend to communicate an intent to commit an act, not that he actually intend to commit the act. "It is well established that a speaker can subjectively intend the speech as a threat even if the speaker never actually intended to carry out the threat[.]" *United States v. Stewart*, 420 F.3d 1007, 1019 n.9 (9th Cir. 2005). Thus, as the Court explained in *Black*, to constitute a true threat "[t]he speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Black*, 538 U.S. at 359-60 (quoting *R.A.V.*, 505 U.S. at 388).

In short, § 750.543m, by its terms and as construed by the Michigan Court of Appeals, is limited to "true threats," a constitutionally proscribable category of speech. Thus, the statute is not constitutionally overbroad, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2. *Void for Vagueness Challenge*

Petitioner next contends that § 750.543m is unconstitutionally vague, and thus void under the Due Process Clause. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a. *Clearly Established Law*

16

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519 (1994) (internal quotation omitted); *see also*, *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). A statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (internal quotation omitted); *see also*, *United States v. Williams*, 553 U.S. 285, 304 (2008). "'[P]erfect clarity and precise guidance'" is not required. *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). To succeed on a vagueness challenge the party asserting the challenge must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

### b. Analysis

Here, the Michigan statute is remarkably precise in defining the conduct which it prohibits. The statute prohibits making a "terrorist threat," and provides an explicit statutory definition of that term as "threaten[ing] to commit an act of terrorism and communicat[ing] the threat to any other person." MICH. COMP. LAWS § 750.543m(1)(a). "Act of terrorism," in turn, is given a detailed definition which requires, *inter alia*, that the threatened act "be a violent felony" and be an act that "is dangerous to human life." *Id.* § 750.543b(a). Both "violent felony" and "dangerous to human life" are further defined in clear, commonly understood terms. *See id.* § 750.543b(b), (h). The statute thus provides detailed standards guiding a person's conduct, in language that is plain

and easily understood.

Petitioner's only argument with respect to vagueness is that the statute is vague because it fails to define "threat." However, a statute need not define each and every term used in the statute to avoid a finding of vagueness. "When the common meaning of a word provides both adequate notice of the conduct prohibited and standards for enforcement, a statute's failure to define a term will not render the statute unconstitutionally void for vagueness." *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir.1996). As courts considering vagueness challenges to similar threat statutes have explained, the term "threat" has a plain, commonly understood meaning, and thus a statute proscribing particular types of "threats" is not unconstitutionally vague merely because it does not define the term "threat." *See Lanthrip*, 218 S.E.2d at 773; *Thoma v. Commonwealth*, 574 S.W.2d 903, 908-09 (Ky. Ct. App. 1979); *Schmailzl*, 502 N.W.2d at 466-67; *Stein v. Commonwealth*, 402 S.E.2d 238, 241 (Va. Ct. App. 1991). In light of the commonly understood meaning of the term "threat," and the detailed definitions of the acts prohibited by the statute, § 750.543m is not unconstitutionally vague. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted,

this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate

should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealabilty. With respect to petitioner's overbreadth challenge, it is indisputable that a state may prohibit true threats without violating the First Amendment, and the Michigan Court of Appeals has interpreted § 750.543m as reaching only true threats. Further, the courts that have considered similar threat statutes have repeatedly and uniformly rejected overbreadth challenges. Thus, the resolution of petitioner's overbreadth claim is not reasonably debatable. With respect to petitioner's vagueness challenge, the statute provides detailed definitions of its terms, and the undefined term "threat" has a plain, commonly understood meaning that the courts have repeatedly held is sufficient to render similar threat statutes not unconstitutionally vague. Thus, the resolution of this claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation,

the Court should also conclude that petitioner is not entitled to a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES

U N I T E D    S T A T E S
MAGISTRATE JUDGE
Dated:6/8/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 8, 2010.

s/Eddrey Butts
Case Manager